UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| DWANE ROY MILLER, | | |
| | Plaintiff, | |
| v. | | 3:17-cv-00325-RCJ-CBC |
| DEPUY SYNTHES SALES, INC., | | **ORDER** |
| | Defendant. | |

The Plaintiff brings five causes of action in a products liability case against the manufacturer of an orthopedic implant. He alleges a defect in the device caused him severe medical complications. However, the Plaintiff cannot show that the device failed to function as expected—a fatal flaw for all of his claims. Consequently, the Court grants summary judgment in the Defendant's favor and closes the case.

**I.   FACTUAL HISTORY**

In 2013, the Plaintiff fractured two bones in his lower right leg. (Mot. Summ. J. Ex. A at 1, ECF No. 54.) To treat the injury, Dr. Christopher Dolan surgically installed a Synthes Locking System, a prescription medical device, to align the broken bones. (Mot. Summ. J. Ex. B. at 2–3.) The Defendant manufactures and distributes the Synthes Locking System. (Mot. Summ. J. at 2:12.)

The Defendant included package inserts that warned that the device could fail if a patient bears weight on it, if the healing process is delayed, or if it is subjected to muscular forces from movement or other repeated stresses. (Mot. Summ. J. Ex. J.) Dr. Dolan provided the Plaintiff with a page of instructions consistent with the warning. (Mot. Summ. J. Ex. I.)

About ten weeks later, the Plaintiff returned to Dr. Dolan complaining of pain in his right leg. (Mot. Summ. J. Ex. M. at 1.) According to his report, Dr. Dolan found that there was a delayed union of the bones and that the device was broken, because the Plaintiff was weight bearing. (*Id.*) The Plaintiff maintains that he followed the instructions and did not bear weight on his leg. (Opp'n Mot. Summ. J. Ex. 2 at ¶ 8, ECF No. 63.) In an affidavit, the Plaintiff's supervisor contends that he routinely witnessed the Plaintiff use a knee scooter. (Opp'n Mot. Summ. J. Ex. 3 at ¶¶ 6–7.)

Over the next year, the Plaintiff's condition worsened, and Dr. Dolan transferred him to an associate, Dr. Aaron Dickens. (Mot. Summ. J. Ex. X at 1–2.) In another surgery, Dr. Dickens replaced the original implant with another Synthes Locking System, which had a more robust plate. (Mot. Summ. J. Ex. Z.) The second device also broke four months later. (Mot. Summ. J. Ex. VV.)

## II. PROCEDURAL HISTORY

The Plaintiff sues contending that a design and manufacturing defect[1] in the initial implant caused his medical complications. Under Nevada law, the Plaintiff claims that this defect gives rise to liability under strict and negligent products liability and breaches of an implied warranty of merchantability, an implied warranty of fitness for a particular purpose, and an express warranty. The Plaintiff retained an expert metallurgist, and the Defendant called the treating physicians to testify as non-retained experts. Each party has filed a motion in limine to exclude the other's experts, and the Defendant filed a motion for summary judgment.

## III. PLAINTIFF'S MOTION IN LIMINE

The Court preliminarily addresses the Plaintiff's motion as this affects the universe of evidence for summary judgment. The Plaintiff argues that his treating physicians should be excluded from testifying about the cause of the device's failure, because they are retained experts without the necessary disclosures. The Court disagrees; the physicians are non-retained experts.

### A. Legal Standard

Whether a witness qualifies as an expert, is a question left to a court's discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Under Federal Rule of Evidence 702, expertise

---

1 The Plaintiff alleges a "design, manufacturing, and/or material defect" in paragraph 19 of his operative complaint. However, Nevada does not recognize a "material defect."

must be helpful and based on "scientific, technical, or other specialized knowledge." Medical expert opinion testimony is based on specialized knowledge, and "a trial court should admit medical expert testimony if physicians would accept it as useful and reliable." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

When a party calls a witness, the party must make the necessary disclosures under Federal Rule of Civil Procedure 26(a); if a party fails to properly disclose, then a court must exclude the testimony "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under Rule 26(a)(2)(B), a party who "retain[s] or specially employ[s] [a witness] to provide expert testimony" must provide, among other things, a "complete statement of all opinions the witness will express and the basis and reasons for them." However, when a party calls an expert as a percipient witness, then the party need only provide the subject matter and a summary of the testimony. Fed. R. Civ. P. 26(a)(2)(C). The Ninth Circuit held that a treating physician is not a retained expert but rather qualifies as a percipient witness when "his opinions were formed during the course of treatment." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). However, if the physician reviews material outside the scope of his treatment to form the basis of his testimony, then the physician must provide a report under Rule 26(a)(2)(B). *Id.*

**A. Analysis**

The Court holds that Drs. Dolan and Dickens are non-retained experts. They are both experts because of their degrees, training, experience, and their expertise using the Synthes Locking System. Dr. Dolan has more than fifteen years of experience in orthopedic surgery and is "very comfortable" using the device. (Opp'n Mot. Lim. Ex. C at 82:12–19, 19:24–20:7, ECF No. 61.) Similarly, Dr. Dickens has over ten years of experience and has used the device "dozens of times." (Opp'n Mot. Lim. Ex. F at 125:14–23.) Thus, they are experts.

The Court also holds that the Defendant did not retain Drs. Dolan and Dickens. The Plaintiff relies on *Goodman* to say that the Ninth Circuit held that treating physicians should be considered retained experts whenever they rely on their expertise. However, this is a misreading of the opinion. There, the court of appeals only held that treating physicians should be considered

retained or specially employed to provide expert testimony when they created their views after their courses of treatment. *Goodman*, 644 F.3d at 826. The Ninth Circuit affirmed the district court's conclusion that detailed reports were required when a party's attorney provided physicians with materials that helped to form the basis of their testimonies for the purposes of litigation. *Id.*

Here, Dr. Dolan formed his opinion about the cause of the Plaintiff's medical complications during his treatment. In a report from the appointment where he found that the device had failed, he noted that the break was "secondary to weight bearing." (Opp'n Mot. Lim. Ex. D at 2.) The Plaintiff corroborated this report in his deposition. After being asked whether Dr. Dolan stated why the implant broke during the appointment, the Plaintiff testified that Dr. Dolan "looked at me like I had been walking on [my leg]." (Opp'n Mot. Lim. Ex. E at 59:11–20.)

Likewise, Dr. Dickens also formed his beliefs over the course of his treatment. Dr. Dickens reviewed the notes from Dr. Dolan that indicated the system failed because of the Plaintiff's noncompliance, and he suspected, at that time, that the break "might have had something to do with [the Plaintiff's] weight bearing status early on in the treatment process." (Opp'n Mot. Lim. Ex. F at 12:8–15.) Additionally, Dr. Dickens' medical records state that the device broke because the Plaintiff "had walked on [his leg] against recommendations." (Opp'n Mot. Lim. Ex. G at 1.)

This Court finds that there is no indication in the record that either physician formed his opinion on the basis of information *after* treatment. Rather, the evidence indicates that they formed their opinions while treating the Plaintiff. Thus, the testimonies are admissible evidence.

**IV.  DEFENDANT'S MOTIONS IN LIMINE AND FOR SUMMARY JUDGMENT**

Next, the Court considers the Defendant's motions. The Defendant argues that there are no material facts in genuine dispute that would entitle the Plaintiff to recovery. The Court agrees and grants summary judgment on all claims and denies the Defendant's motion in limine as moot.

**A.  Summary Judgment Standard**

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. When the party seeking summary judgment would not bear the burden of proof at trial, it satisfies its burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan J., concurring). Summary judgment should be denied if either the initial burden is not met, or, if after that burden is met, the other party establishes a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

**B.  Analysis**

Applying this standard, the Court holds that the Defendant has satisfied its burden for each claim. Thus, the Court grants summary judgment for the Defendant in full.

*1.  Strict Products Liability*

The Plaintiff raises a claim of strict products liability arguing that a design defect and manufacturing defect in the first Synthes Locking System caused his injuries. For a claim of strict products liability to prevail under Nevada law, a plaintiff must prove that (1) the defendant placed a defective product in the market and (2) the plaintiff suffered an injury which was caused by the defect. *Allison v. Merck & Co., Inc.*, 878 P.2d 948, 952 (Nev. 1994).

The Defendant argues for summary judgment on four grounds: (1) the Plaintiff failed to show a defect; (2) the Plaintiff's misuse caused his injuries; (3) the Plaintiff failed to produce a medical expert for causation; and (4) the learned intermediary doctrines shields the Defendant from liability. The Court agrees with the Defendant's initial argument.

First, the Plaintiff failed to show that the device is defective, since it worked as reasonably expected and the Plaintiff has no commercially feasible alternative. For design and manufacturing defects, Nevada applies the consumer expectation test, which states that a product is defective when it "fail[s] to perform in the manner reasonably to be expected in light of its nature and intended function and was more dangerous than would be contemplated by the ordinary user."

*Ford Motor Co. v. Trejo*, 402 P.3d 649, 650 (Nev. 2017) (quoting *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970)). The reasonable expectation may be influenced by warnings that accompany a product. *Id.* at 656. Accordingly, "warnings should shield manufacturers from liability *unless* the defect could have been avoided by a commercially feasible change in design." *Robinson v. G.G.C., Inc.*, 808 P.2d 522, 525 (Nev. 1991).

Courts have routinely held that the duty to warn of risks associated with prescription medical devices runs only to the physician—not to consumers directly. *See, e.g.*, *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279 (11th Cir. 2002). For the manufacturer's liability, it is immaterial whether the physician relays the warnings to the consumer. *Id.* at 1283. While generally a question of fact, a warning is adequate as a matter of law when it "is accurate, clear, and unambiguous." *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989) (collecting cases). The Tenth Circuit has enumerated a nonexclusive list of factors to consider in determining the adequacy of a warning: (1) whether the warning conveyed the scope of danger, (2) whether the warning conveyed seriousness of the possible harm, (3) whether physical aspects of the warning would alert a reasonably prudent person, and (4) whether the means by which the warning was conveyed were adequate. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003) (citing *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn. 1994)); *accord Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 665 (Nev. 1998).

In this case, the Defendant provided a warning insert to the treating physicians. (Mot. Summ. J. Ex. D at 21:8–9.) The Plaintiff does not challenge the sufficiency of the Defendant's warning, but if he had, such a challenge would fail. Applying these factors to this warning shows that a physician should have been apprised of the dangers associated with use of the device. The warning stated, in bold and underlined font, that the device can break when the bones fail to unionize. The warning continued, in regular font, that "If healing is delayed . . . the implant will eventually break due to metal fatigue." (Mot. Summ. J. Ex. J at 1.) Additionally, the warning unambiguously cautioned: "In the absence of solid bony union, the weight of the limb alone, muscular forces associated with moving a limb, or repeated stresses of apparent relatively small

magnitude, can result in failure of the implant." (*Id.*) Furthermore, the warning listed the injuries that could result under an enlarged, bold, and underlined heading: breakage of the implant, nonunion of the bone, and pain. (*Id.* at 2.)

Both treating physicians showed a strong command of these dangers. Dr. Dolan understood that the device could fail from weight bearing, (Mot. Summ. J. Ex. H 45:17–22), from the bones not healing fast enough, (*Id.* at 78:5–9), or from normal stresses and forces, (*Id.* at 79:25–80:7). It is only material whether Dr. Dolan was adequately warned, because he was the physician who prescribed the first device. Nevertheless, Dr. Dickens' knowledge of the warning is evidence that reasonable physicians would have seen and understood the warning. Dr. Dickens knew that the device could fail from bearing weight, (Def. Opp'n Mot. Limine Ex. F 12:10–13), or from a delayed bony union, (Mot. Summ. J. Ex. GG 22:22–23). Whether the Plaintiff saw, read, or understood the warning is irrelevant. *See Ellis*, 311 F.3d at 1283. Thus, the warning is adequate as a matter of law, and the reasonable expectation must encompass this warning.

The earliest evidence that the device failed was an x-ray that Dr. Dolan took ten weeks after the surgery that showed a delayed union of the bones. The Plaintiff has no evidence to suggest that the device failed prior to the delayed union. The warning noted that the device could fail if the bones did not heal properly. And the Plaintiff offers no alternative; even if he pointed to the second more robust device, such an argument would be in vain. No one disputes that the second device failed, and the Plaintiff now claims that device is also defective. (Opp'n Mot. Summ. J. 12:3–4.) Critically, adequate warnings negate liability absent a showing of a commercially feasible, safer alternative. *Robinson*, 808 P.2d at 525. Thus, the Plaintiff's cannot show a defect.

The Plaintiff makes two additional arguments in response. He argues first, "The mere evidence of a malfunction is sufficient evidence of a defect." (*Id.* at 14:9.) The Plaintiff does not provide where he acquired this conclusory assertion. The closest statement from the Nevada Supreme Court is "that proof of an unexpected, dangerous malfunction may suffice to establish a prima facie case for the plaintiff of the existence of a product defect." *Stackiewicz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 928 (Nev. 1984). In that case, the steering wheel of a car suddenly

locked, causing a crash, and there was no warning of this possibility. Here, the malfunction could not have been "unexpected" since the Plaintiff was warned that the device could break.

Next, the Plaintiff posits a defect by stating that the device was not sufficiently strong in the abstract without providing a practical alternative. According to him, the Synthes Locking System should never break absent abuse. However, a reasonable consumer could not expect the Plaintiff's idealized product, since the warning alerts consumers that the device could break from prolonged healing, moving a limb, or other repeated stresses of small magnitude. The Plaintiff does not show the device departed from its warning. The Plaintiff has no evidence that the device failed before there was a delayed union of the bones, no evidence that there is a safer and commercially feasible alternative, and no evidence that shows when or why the device failed. The Plaintiff was entitled to a reasonable product—not a perfect, unbreakable one. Thus, neither of the Plaintiff's arguments survive judicial scrutiny, and no reasonable juror could find a defect.

Second, turning to Defendant's other arguments, the Defendant makes a compelling case that the Plaintiff misused the product by failing to comply with medical advice. Facebook pictures, medical reports, and the physicians' testimonies all evidence noncompliance. If the Plaintiff did misuse the product and that misuse was the cause of the product's failure, then the Plaintiff's case must fail. *See Andrews v. Harley Davidson, Inc.*, 796 P.2d 1092, 1095 (Nev. 1990). However, whether the Plaintiff complied with medical advice is subject to a genuine dispute, because the Plaintiff and his supervisor swear that he complied with the physicians' instructions. A reasonable juror could believe these testimonies; thus, summary judgment is inappropriate on this basis.

Third, the Defendant is not entitled to summary judgment based on the Plaintiff's failure to provide a medical expert. Under Nevada law, a plaintiff must produce medical expert testimony to establish causation, when "the cause of [the injury] is not immediately apparent." *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1199 (D. Nev. 2008), *aff'd,* 371 F. App'x 752 (9th Cir. 2010) (citing *United Exposition Serv. Co. v. State Indus. Ins. Sys.*, 851 P.2d 423, 425 (Nev. 1993)). In order to prove causation here, the Plaintiff must show (1) that the device failed because of a defect and (2) that this failure caused the Plaintiff's medical complications.

Nevada law does not require a medical expert to show that the device failed because of a defect—this is not a medical injury. On the other hand, the law does require a medical expert to opine that the failure of the device caused the medical complications. Nevertheless, the Plaintiff can rely on the treating physicians for this conclusion. Even though they believe that the device failed because of alleged abuse, they do not dispute that the device failed and that this failure harmed the Plaintiff.

Lastly, the Defendant relies on the learned intermediary doctrine. However, Nevada has only applied the doctrine in cases based on failure to warn defects. *Kwasniewski v. Sanofi-Aventis U.S., LLC*, No. 2:12-cv-515, 2012 WL 6589250, at *2 (D. Nev. Dec. 17, 2012), *aff'd,* 637 F. App'x 405 (9th Cir. 2016); *Moses v. Danek Med., Inc.*, No. cv-s-95-512, 1998 WL 34024164, at *4 (D. Nev. Nov. 30, 1998); *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1158 (Nev. 2011). The Plaintiff does not offer any argument to rebut the application of the doctrine here. Nonetheless, the Court declines to speculate whether Nevada would extend this protection to other defects, especially when the Court has another adequate basis for granting summary judgment. In sum, the Court grants summary judgment on this cause of action, because the Plaintiff cannot show a defect.

### 2. *Negligent Products Liability*

The Plaintiff also argues that the Defendant was negligent. For this cause of action, the Plaintiff must prove: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008). In order to prove breach here, the Plaintiff would need to show that the device was defective and that the Defendant acted unreasonably. *See Papike v. Tambrands Inc.*, 107 F.3d 737, 744 (9th Cir. 1997). However, as discussed above, the Plaintiff cannot meet the less onerous standard of merely showing a defect. Thus, the Court grants summary judgment on this claim.

### 3. *Breach of an Implied Warranty of Merchantability*

The Plaintiff initially raised a breach of an implied warranty of merchantability but now, in the Plaintiff's Correction (ECF No. 67), concedes that this warranty "is clearly not an issue in this case." Consequently, this Court grants summary judgment in the Defendant's favor.

### 4. Breach of an Implied Warranty of Fitness for a Particular Purpose

According to the Plaintiff, the Defendant breached an implied warranty of fitness for a particular purpose. Nevada Revised Statutes 104.2315 provides for an implied warranty for a particular purpose when: (1) the seller has reason to know of a particular purpose and (2) that the buyer relies on the seller's skill or judgment to furnish a good that is fit for such a purpose. The Plaintiff fails to prove either of these essential elements. First, there is no particular purpose on which the Plaintiff could conceivably rely—his use was ordinary. Second, there is no evidence that the Plaintiff relied on the Defendant's judgment in determining how to treat his leg. Therefore, the Court holds that summary judgment for the Defendant is proper on this claim.

### 5. Breach of an Express Warranty

Lastly, the Plaintiff alleged a breach of an express warranty but now admits in his oppositional brief that he has no basis in the record for this claim. The Court agrees. Therefore, the Court grants summary judgment in favor of the Defendant on all of the Plaintiff's causes of action and need not consider the Defendant's motion in limine.

**CONCLUSION**

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (ECF No. 54) is GRANTED.

IT IS FURTHER ORDERED that the Plaintiff's Motion in Limine (ECF No. 60) is DENIED.

IT IS FURTHER ORDERED that the Defendant's Motion in Limine (ECF No. 71) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 26th day of August, 2019.

_____
ROBERT C. JONES
United States District Judge